### BURROUGH v. ABEL.

(Circuit Court, E. D. Pennsylvania. March 1, 1900.)

#### No. 10.

INTERNAL REVENUE—DISTILLED LIQUORS—ACT 1868.

Act July 20, 1868, reducing the tax on distilled spirits, but requiring payment on the quantity manufactured, instead of the quantity remaining when it was withdrawn from bond, as under prior acts, and which took effect by its terms as to "all distilled spirits on which the tax prescribed by law has not been paid," as applied to spirits which had been previously placed in a bonded warehouse and had not been withdrawn, required payment of the tax upon the quantity in existence when the act was passed; being neither retroactive, so as to tax spirits which had, prior to its enactment, become lost by leakage, soakage, or evaporation, nor affected by a

custom of the department, continued for a time after its passage, to accept payment on the quantity shown by a regauge at the time of withdrawal.

This was an action to recover an amount paid as internal revenue tax, and alleged to have been illegally exacted.

T. W. Neill and David W. Sellers, for plaintiff.

James M. Beck and Francis Fisher Kane, for defendant.

McPHERSON, District Judge. The facts that give rise to this dispute appear in the following case stated:

"Parsey O. Burrough, the plaintiff above named, who survived Henry S. Hannis. late co-partners as Henry S. Hannis & Co., claims to recover from the defendant, who was collector of internal revenue, the sum of $14,339.26, with interest from the 30th day of April, 1869; this sum being the amount of certain internal revenue taxes collected from the said Henry S. Hannis & Co. by said Charles Abel as collector of internal revenue for the First collection district of Pennsylvania, under the following circumstances:

"The plaintiff's firm of Henry S. Hannis & Co. were dealers in distilled spirits, and the defendant was collector of internal revenue for the First collection district of Pennsylvania. Said Henry S. Hannis & Co. owned certain distilled spirits in a general bonded warehouse of the United States, which spirits had been manufactured and bonded prior to July 20, 1868.

"These spirits were entered into general bonded warehouse under acts passed prior to July 20, 1868, and were at the time of their entry subject to the tax imposed by the said acts. Prior to the approval of the act of July 20, 1868, and until April 14, 1869, it had been the custom to permit spirits bonded prior to July 20, 1868, to be withdrawn upon the payment of the tax upon the contents of the packages as shown by a regauge upon withdrawal.

"That on the 14th day of April, 1869, Deputy Commissioner of Internal Revenue Douglass directed that, in all withdrawals of spirits from any old class A or class B warehouse, the tax of 60 cents per gallon should be collected upon the quantity as shown by the gauge at the time said spirits were entered in or transferred to the warehouse.

"That on the 20th, 24th, 29th, and 30th days of April, 1869, Henry S. Hannis & Co. withdrew from bond 2,068 packages of spirits which had been bonded prior to July 20, 1868. That the following table shows the date of withdrawal, the number of packages withdrawn, the contents of the packages when entered, the contents when withdrawn, the quantity lost by leakage, soakage, or evaporation, and the amount of tax collected:

"From April 20 to 30, 1869, inclusive:

| | | |
|---|---|---|
| Number of packages | 2,068 | |
| Quantity when entered | 87,823 35 | proof gallons. |
| Quantity when withdrawn | 64,560 | package gallons. |
| Lost by leakage, etc | 23,841 30 | proof gallons. |
| Tax paid | $53,166 55 | |

"The sum of $14,339.26, collected in accordance with the instruction of the deputy commissioner as aforesaid, on the 23,841 $30/100$ proof gallons of spirits so lost by leakage, soakage, and evaporation, was paid under protest to the collector. The receipts therefor, excepting for 264 packages of the withdrawal of April 20th, which have been mislaid, are annexed as exhibits.

"Prior to June 6, 1873, a claim for the refunding of said sum paid as above was filed with the commissioner of internal revenue. The form in which said claim was filed cannot now be ascertained. On February 16, 1878, an amended claim for the refunding of the said sum was filed. Copies of papers in proof of the filing and presentation of the said claim are attached to this statement as exhibits. On June 9, 1897, the commissioner of internal revenue rejected the said claim. A copy of his letter to counsel rejecting the said claim is attached to this statement as exhibit. The present suit was brought within one year after this rejection of the said claim.

"If the said court shall be of the opinion that the said sum of $14,339.26 was, under the circumstances stated, illegally collected by the defendant from

the firm of Henry S. Hannis & Co., then the court shall enter judgment for the plaintiff for the said sum, with or without interest thereon, as the court may deem meet; and if the court is of opinion that the collection of said sum was not contrary to law, then judgment to be entered for the defendant."

My opinion upon the questions thus submitted for decision may be stated in a few words. It is clear—indeed, there is no dispute on this point—that the acts of July 1, 1862, March 7, 1864, and June 30, 1864, imposing a tax or excise duty on distilled spirits, did not impose the duty upon that article until it was sold, or was removed from a bonded warehouse for consumption or sale. The result was that no duty was laid upon the quantity that had disappeared by leakage or evaporation. The owner lost the spirits, and the government lost the opportunity to tax. In 1868, congress adopted a new policy. By the act of July 20th the tax on distilled spirits was greatly reduced, but upon spirits thereafter manufactured it was to be levied as soon as the process of distillation should be complete. Of spirits thus manufactured, therefore, not only would the loss by leakage and evaporation continue to fall upon the owner, but he would also be obliged to pay the tax upon the quantity distilled, although part of it might thus have been lost.

But the act of 1868 was dealing with all distilled spirits, and intended to tax such as were then in existence, as well as spirits that might thereafter be manufactured. The spirits then in existence were deposited in bonded warehouses, and are included in the act under the phrase, "All distilled spirits on which the tax prescribed by law has not been paid." It is with such spirits alone that the present controversy is concerned. The government's position is that the act of 1868, although a taxing statute, had a retroactive effect, and must be construed to relate to the time of manufacture, and to impose a tax or duty upon the whole quantity of spirits that was then distilled. The plaintiff's position is that the tax should be computed upon the quantity of spirits found to remain in the packages at the dates of withdrawal in 1869,—the argument being that a departmental custom thus to compute the tax prevailed after, as well as before, the passage of the act of 1868, and that the government is bound by the custom adopted by its officers.

In my opinion, neither position is correct. The plaintiff's argument comes to this: that, even if congress did tax in 1868 the whole quantity that had been originally put into the warehouse, nevertheless the commissioner of internal revenue could by order or regulation relieve the owner from the statutory obligation to pay tax upon the whole, and could lawfully permit him to discharge his liability by the payment of a smaller sum. This, in effect, would be a partial repeal of a statute by the act of an administrative officer; and it need not be argued, I think, that (assuming the custom to have existed) such a conclusion is inadmissible. Neither am I able to uphold the government's position. A retroactive tax or duty upon property that is no longer in existence is new in my experience, and I do not believe that the established principles of taxation will justify a duty that cannot be levied in fact, but must be

levied (if at all) by applying the fiction of relation, so as to reach a nonexistent substance. No doubt, when the act of 1868 was passed, congress had the power to tax at will "all distilled spirits on which the tax prescribed by law [had] not been paid." But of necessity this phrase meant such spirits as were then actually in the warehouse, and were therefore capable of being taxed. What had already evaporated or leaked away had ceased to be property in any sense. It had passed into the air, into the wood and fiber of the warehouse floor, perhaps had entered into some new chemical combination, but at all events was wholly beyond recapture. I am not aware of any principle of taxation that permits the taxing power to declare, in effect, to a citizen:

"You own to-day 1,000 gallons of spirits. Two years ago you owned 1,500 gallons, but one-third of this has vanished beyond your power or mine to regain. I never laid a tax upon this 500 gallons, but I shall tax it now, by going back in thought to the date of its manufacture, and pretending that I taxed it then. It is true that when it was distilled there was no such tax or duty as I am now endeavoring to collect, for the act imposing it has just been passed; and it is also true that nothing is left of these 500 gallons that were then in existence. But these objections are of no weight. I meet them by pretending now that the act of 1868 had then been passed, and by pretending, further, that the property that now has vanished has not really disappeared."

To my mind, the question under consideration is so clear that to state it is sufficient. Surely, if part of the stock in a bonded warehouse had been burnt in 1867, the government would scarcely contend that congress in 1868 either intended, or had the power, to lay a duty upon the part destroyed. In my opinion, the act of 1868 laid a tax upon every gallon of distilled spirits that was then in bond, and this tax was payable even upon so much of the spirits as might thereafter evaporate or leak away; but I am of opinion, also, that the act did not, and could not, lay a tax or duty upon spirits that had then ceased to exist.

If, therefore, the case stated showed how many gallons of the plaintiff's spirits were in bond on July 20, 1868, it would be easy to calculate how much the plaintiff has overpaid the government, and for what sum he is entitled to recover. As the case stands, however, I am unable to enter any judgment. I cannot answer either of the questions submitted for decision, because both questions require me to deal with the sum in controversy as a whole, and I think that part of this sum was lawfully due, and part was not thus due. Neither can I enter a judgment upon what I regard as the vital point, because the necessary facts do not appear. If the parties desire to have such judgment entered, they have leave to amend the case in the direction indicated by this opinion. If it be so amended, I will then decide the remaining question,—whether the plaintiff is entitled to interest, and, if so, from what date.